## HERON *v.* THE MARCHIONESS.

### (*Circuit Court, N. D. Florida.* March 19, 1890.)

WHARVES—LIABILITY FOR WHARFAGE—MOORING FOR SAFETY.

A ship compelled by stress of weather to moor to a wharf for safety is not liable to a charge for wharfage where the wharf is a private one, and no fixed rate of charge is in use.

In Admiralty. On appeal from district court. 40 Fed. Rep. 330.

*John C. Avery,* for libelant.

*Blount & Blount,* for claimant.

PARDEE, J. The steam-ship Marchioness was at anchor in the port of Pensacola, loading with timber, when a severe gale sprung up, which caused her to drag her anchor and drift towards libelant's wharf. When near the wharf, about 15 to 20 feet away, with timber along-side of her, and with two anchors out, she went aground. To prevent forging ahead, the master put out a side line and chain, and fastened both to a check-post on libelant's wharf. This line and chain remained for about an hour, when they were taken off. Soon after, the gale having abated, a tug towed the Marchioness and timber to a safe anchorage. The libel is brought in this case to recover wharfage. To maintain the libel, the court must find an implied contract between the libelant and the ship to use the wharf, and to pay for such use. Whether such contract can be found depends upon the character, public or private, of the wharf, for what purposes it was built, the use to which it has been applied, the place where located, the nature of the structure, and the general circumstances of the case. See *Dutton* v. *Strong,* 1 Black, 24. If libelant's wharf was a public wharf, in the sense that the owner did not reserve exclusive enjoyment, but was under obligation to concede to others the privilege of landing their goods or mooring their vessels there upon the payment of a reasonable compensation as wharfage, and the said wharf was suitable for the purpose of mooring vessels, and was held out for public use, and was so used, then, as the master and owners of the Marchioness voluntarily used the said wharf to moor their ship, it is probable a contract to pay wharfage may be inferred. That is to say, if the libelant, having a suitable wharf for mooring ships, tendered it to the public, so that he may be presumed to have consented to the mooring of the Mar-

chioness, and the Marchioness accepted and used such wharf, an implied contract to pay wharfage may be presumed. Looking to the evidence in the case, we find the following: Louis Daniel, wharfinger, testifies: "The wharf is a private wharf projecting from a lot owned by Dr. Heron." The libelant, Heron, testifies:

"The wharf alluded to is my property, and private. I never had a steamer along-side of my wharf since I have been a wharf-owner. I have, therefore, never made any charges. My charges have always been for vessels lying along-side of my wharf for the purpose of discharging ballast, and that by special rates. I have before charged other vessels similar to those of the Marchioness; that is, they have drifted into wharf, and made fast to same, one small vessel, and one medium-sized bark. One was there a day and a part of a day. The other was there two days. I have made charges for timber rafts laying along-side of my wharf, being put there without orders, in fair weather. This occurred twice."

This is all the evidence there is with regard to the public character of libelant's wharf. It does not appear that any fixed charges or rates were had and maintained for the use of said wharf. It does not appear that the public had a right to use, or did use, the said wharf for the purpose of landing goods or mooring ships. The Marchioness had no business to transact with the libelant. The vessel did not go to the pier for freight, nor for mooring purposes. The fact is that the vessel, in an emergency, used the wharf for the purpose of putting out a safety line, just as it might have used a pile or checking-post. The owner of the wharf had the right, so far as the evidence shows, to compel the removal of the lines of the Marchioness, as put there without authority. *Dutton* v. *Strong, supra.* The general scope of the evidence is that the libelant's wharf was not intended to be used for the purpose of mooring ships in time of danger. Under these circumstances, it does not appear that the court ought to find an implied contract between the owner of the wharf and the ship for the use of the wharf. Without such contract, as has been said before, the libel must fail.

I have examined the opinion of the district judge in this cause, (40 Fed. Rep. 330,) and consider that we differ on the facts, and not the law, of the case. Whether the evidence is the same on this hearing as in the district court does not appear. A decree will be entered dismissing the libel, with costs.